IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALLAN FLANDRO and SUSANNE FLANDRO,<br><br>    Plaintiffs,<br>v.<br><br>CHEVRON PIPE LINE COMPANY, *et al.*,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER REMANDING CASE TO THIRD JUDICIAL DISTRICT OF UTAH, SALT LAKE COUNTY**<br><br>Case No. 2:18-CV-697<br><br>District Judge Jill N. Parrish |

Before the court is a Motion to Remand filed by plaintiffs Allan and Susanne Flandro on October 3, 2018 (ECF No. 16). Removing defendant Chevron Pipe Line Company ("Chevron") filed an opposition on October 17, 2018 (ECF No. 34), to which plaintiffs replied on October 29, 2018 (ECF No. 39). On the basis of the parties' memoranda, a review of relevant law, and for the reasons below, plaintiffs' Motion to Remand is granted.

### I.   BACKGROUND

Plaintiffs initiated an action in state court on July 23, 2018. On August 3, 2018, counsel for defendant Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-day Saints ("CPB")—a citizen of Utah—executed and transmitted to plaintiffs' counsel an Acceptance of Service document as contemplated by Utah Rule of Civil Procedure 4(d)(3)(C). On August 22, 2018, Chevron removed that action to federal court. The following day, plaintiffs voluntarily dismissed the case.

On August 24, 2018, plaintiffs filed a new complaint in state court. Five days later, on August 29, 2018, plaintiffs' counsel sent the complaint to CPB's counsel, requesting that he

accept service on behalf of his client as he had done in the first lawsuit. CPB's counsel assented the following day, on August 30, 2018, writing to plaintiffs' counsel that "CPB accepts service as of today's date." (ECF No. 39-2 at 6). Contrary to the first lawsuit, however, CPB's counsel did not execute and return an acceptance of service document to plaintiffs' counsel.

Five days later, on September 4, 2018, Chevron removed the action to federal court, asserting both diversity jurisdiction and federal question jurisdiction.

## II.     ANALYSIS

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Thus, to determine whether this action was properly removed, the court must analyze whether the operative complaint would have established subject matter jurisdiction if filed in this court in the first instance.

"Because the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). "Federal removal jurisdiction is statutory in nature and is to be strictly construed." *Archuleta v. Lacuesta*, 131 F.3d 1359, 1370 (10th Cir. 1997). "Doubtful cases must be resolved in favor of remand." *Id.*

Chevron, the party invoking federal jurisdiction via removal, asserts both federal question jurisdiction and diversity jurisdiction. As explained below, Chevron has not met its burden to establish federal question jurisdiction, and whether or not it has met its burden to establish

diversity jurisdiction, the presence of a forum defendant to which the plaintiffs have timely objected[1] requires that this case be remanded.

### A. THE SCOPE OF FEDERAL-QUESTION JURISDICTION UNDER 28 U.S.C. § 1331

Under 28 U.S.C. § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "[W]hether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Thus, a plaintiff is master of his complaint, and "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Id.* at 809 n.6. "Nor can federal question jurisdiction depend solely on 'a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.'" *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

In general, for purposes of § 1331,[2] a suit "aris[es] under" the law that creates the cause of action. *Merrell Dow Pharms., Inc.*, 478 U.S. at 808. Indeed, "the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which

---

[1] The Tenth Circuit holds that the forum-defendant rule is procedural, rather than jurisdictional. *See Herrera v. Las Cruces Pub. Schs.*, 695 F. App'x 361, 366 (10th Cir. 2017). Thus, a plaintiff's failure to timely object to removal on these grounds will amount to waiver. *Id.* However, the Tenth Circuit has stopped short of bringing the forum-defendant rule within the ambit of § 1447(c), which requires that motions to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal[.]" *Id.* at 366 n.6. Even if the Tenth Circuit were to adopt the 30-day timeframe, plaintiffs' motion to remand asserting their objection to the forum defendant was brought 29 days after removal.

[2] The Supreme Court has interpreted § 1331 as conveying a more limited grant of federal-question jurisdiction than is permissible under Article III. *Merrell Dow Pharms., Inc.*, 478 U.S. at 807 ("Although the constitutional meaning of 'arising under' may extend to all cases in which a federal question is 'an ingredient' of the action, we have long construed the statutory grant of federal-question jurisdiction as conferring a more limited power." (citation omitted)).

federal law creates the cause of action." *Id.* "As a rule of inclusion, this 'creation' test admits of only extremely rare exceptions . . . ." *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

The parties agree that plaintiffs' complaint asserts only state law claims, and thus, federal law does not "create" plaintiffs' causes of action. Chevron contends, however, that plaintiffs' state law claims implicate "substantial questions" of federal law sufficient to establish federal-question jurisdiction.

"The 'substantial question' branch of federal question jurisdiction is exceedingly narrow—a 'special and small category' of cases." *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). This slim path to federal court is available only when a state law claim contains "a federal issue [that] is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

"The narrow boundaries of the substantial question category are marked by a few important principles." *Becker*, 770 F.3d at 947. One principle is that the Supreme Court's recognition of this special and rare category of cases "does not 'disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* (quoting *Merrell Dow Pharms., Inc.*, 478 U.S. at 813). And, "[t]o determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." *Gilmore*, 694 F.3d at 1173. "Finally, if a claim does not present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases,' but rather is 'fact-

bound and situation-specific,' then federal question jurisdiction will generally be inappropriate." *Becker*, 770 F.3d at 947–48 (quoting *Empire Healthchoice Assurance, Inc.*, 547 U.S. at 700–01).

Plaintiffs' complaint contains three varieties of state tort claims: (1) negligence, (2) strict liability for abnormally dangerous and/or ultra-hazardous activities, and (3) negligent misrepresentation. Chevron does not identify any essential elements of federal law in any of these claims. Instead, Chevron identifies the presence of two potential federal issues, neither of which are "necessarily raised" by plaintiffs' claims.

*1. Plaintiffs' Use of Facts and Conclusions Produced by a Federal Investigation*

First, Chevron points to the complaint's incorporation of facts and conclusions reached by a federal investigation conducted by the Pipeline and Hazardous Materials Safety Administration ("PHMSA") regarding the spill events at issue in this lawsuit. Chevron argues that federal law will preclude plaintiffs from relying on the investigation, pointing to a regulation that forbids PHMSA employees from participating in court proceedings. Of course, use of the PHMSA report does not collide with the prohibition on employees testifying, but Chevron argues that plaintiffs' reliance on the report "inevitably raises important issues of federal law, including whether, and to what extent, the Court may require a [Department of Transportation ("DOT"] employee who prepared the PHMSA documents to testify here despite the DOT's regulation." (ECF No. 34 at 6). This argument fails for at least two reasons.

First, and most importantly, a hypothetical evidentiary dispute in which a federal regulation may play a role is neither necessarily raised nor substantial. Negligence under Utah law does not require that a plaintiff rely on facts and conclusions from a federal investigation. Moreover, the PHMSA report is not the sole source of evidence about these events, so it would seem abundantly clear that plaintiffs could still recover even if they are unable to use the report. And the mere fact that the state court might need to resolve an evidentiary dispute hinging on

5

this regulation does not render the federal issue substantial. *See Gilmore*, 694 F.3d at 1171 (explaining that the "mere need to apply federal law in a state-law claim" is insufficient (quoting *Grable*, 545 U.S. at 313)).

Second, the court cannot conceive of a circumstance in which that regulation will even be implicated because plaintiffs are very likely to be able to rely on the PHMSA report under Utah Rule of Evidence 803(8)(A)(iii)—exempting from the rule against hearsay any records or statements of a public office that set out "factual findings from a legally authorized investigation"—without compelling a PHMSA employee to testify. If, for some very unlikely reason, one of the report's authors must be called to testify, the regulation at issue—49 CFR § 9.9—only forbids employees from testifying "as an expert or opinion witness[.]" Of course, introduction of this report would not require that a DOT employee be qualified as an expert witness, nor would it require a DOT employee to opine. And the regulation provides a procedure for private litigants to obtain authorization from DOT counsel to call a DOT employee to testify "as to facts within that employee's personal knowledge with regard to matters arising out of his or her official duties." 49 CFR § 9.9(b). In short, Chevron's attempt to manufacture this federal issue that is unlikely to materialize—and is in any event not necessarily raised by plaintiffs' well-pleaded complaint—is unavailing.

2. *Plaintiffs' Use of Federal Regulations and Standards*

Next, Chevron argues that plaintiffs have intentionally omitted necessarily raised federal questions from their complaint to avoid removal, relying on references to federal statutes and regulations that appeared in the voluntarily-dismissed initial complaint but were omitted from the operative complaint. Chevron argues that under the "artful pleading" doctrine, plaintiffs cannot frustrate Chevron's right of removal by deleting these references.

"Under the 'artful pleading' doctrine, . . . a plaintiff may not defeat removal by failing to plead federal questions that are *essential elements* of the plaintiff's claim." *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996) (emphasis added). Stated differently, if a plaintiff's right to relief depends on a substantial question of federal law, a plaintiff may not avoid removal merely by failing to plead that essential element. Thus, the doctrine is applicable only if a federal question is an essential element of plaintiffs' claims.

Chevron argues that plaintiffs' claim asserting strict liability for Chevron's abnormally dangerous activity contains an essential federal question that has been impermissibly omitted by plaintiffs, arguing that the allegations in support of that claim are "merely . . . shorthand for a complex set of contested allegations that [Chevron] purportedly violated multiple federal laws." (ECF No. 34 at 6). This "shorthand" argument is difficult to follow, but it is enough to say that there is no federal element in a claim for strict liability for abnormally dangerous activities under Utah law. Utah has adopted the factors from the Restatement (Second) of Torts to determine whether an activity is abnormally dangerous. Those factors are:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Walker Drug Co., Inc. v. La Sal Oil Co.*, 902 P.2d 1229, 1233 (Utah 1995) (quoting the Restatement (Second) of Torts § 520)). Of course, this list does not contain any essential element of federal law.

Chevron makes much hay of plaintiffs' omission of federal statutes and regulations, directing the court to an exhibit that identifies the statutes and regulations in the voluntarily-

dismissed complaint but omitted from the operative complaint, apparently to suggest that plaintiffs have impermissibly obscured their "substantial questions" of federal law. But whether plaintiffs edited the complaint for that purpose is of no moment because even the initial complaint would not have availed Chevron of "substantial question" jurisdiction. Indeed, Chevron's exhibit reveals that the federal references in the dismissed complaint were largely used to plead plaintiffs' negligence per se claim, a use of federal law the Supreme Court has repeatedly deemed insufficient to establish federal question jurisdiction. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*, 545 U.S. 308, 319 (2005) ("A general rule of exercising federal jurisdiction over state claims resting on federal . . . statutory violations would . . . have heralded a potentially enormous shift of traditionally state cases into federal courts.").

The voluntarily dismissed complaint also contained factual conclusions made by federal agencies as well as references to federal laws that deem oil pipe lines hazardous and/or abnormally dangerous activities, for the purpose of bolstering plaintiffs' state tort causes of action. Even aggregated, these federal references do not create a "substantial question" of federal law. Plaintiffs could have peppered their complaint with even more references to federal standards for purposes of pleading facts, establishing negligence per se, or illustrating the hazardous or abnormally dangerous nature of defendants' business without altering this court's conclusion that Chevron has not come close to meeting the narrow exception to the creation test for federal question jurisdiction.

In sum, plaintiffs' causes of action are not created by federal law, and they do not contain any federal issues that are necessarily raised, actually disputed, substantial, and capable of resolution in federal court without altering the federal-state balance approved by Congress. Thus,

the complaint would not have established federal question jurisdiction if filed in federal court in the first instance. As such, the case may not be removed under federal question jurisdiction.

### B. FACTUAL DISPUTES PRECLUDE DETERMINATION OF PLAINTIFFS' DOMICILE

Next, plaintiffs argue that the court does not have jurisdiction under § 28 U.S.C. § 1332 because plaintiffs, like defendant CPB, are citizens of Utah. Thus, there is not complete diversity.

The parties agree that plaintiffs were citizens of Utah during the events at issue in this case. The crux of the dispute is whether plaintiffs have subsequently acquired a new domicile by virtue of their current residence in California. Plaintiffs attest that while they presently reside in California, they have never possessed an intent to remain there permanently and thus, they remain citizens of Utah. Plaintiffs support their declarations with indicia of their intent to remain Utah citizens. Chevron responds with publicly-available information it believes to be evidence of plaintiffs' intent to remain in California, and it requests leave to conduct jurisdictional discovery on this issue. The court need not resolve this dispute because even if is determined that plaintiffs are California domiciliaries, and the parties therefore are completely diverse, the case must be remanded due to the presence of a forum defendant.

### C. THE FORUM DEFENDANT RULE REQUIRES THAT THIS CASE BE REMANDED

Under 28 U.S.C. § 1441(b)(2), "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Chevron argues that § 1441(b)(2) precludes removal only *after* a forum defendant has been "properly joined and served[.]" Thus, because CPB's counsel did not execute an acceptance of service before Chevron removed the action, Chevron argues that § 1441(b)(2) poses no obstacle to removal. The court cannot agree. Rather, the court concurs with district courts that

9

have concluded that the forum defendant rule—plainly enacted to bar diversity-premised suits from federal court when at least one defendant is a citizen of the forum—cannot be circumvented by resort to gamesmanship.

"The underlying purpose of diversity of citizenship [jurisdiction] . . . is to provide a separate forum for out-of-state citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the federal courts." S. Rep. No. 85-1830 (1958), *as reprinted in* 1958 U.S.C.C.A.N. 3099, 3102. "The forum defendant rule . . . recognizes that the rationale for diversity jurisdiction no longer exists when one of the defendants is a citizen of the forum state since the likelihood of local bias is reduced, if not eliminated." *Lone Mountain Ranch, LLC v. Santa Fe Gold Corp.*, 988 F. Supp.2d 1263, 1266 (D.N.M. 2013) (quoting *Swindell-Filiaggi v. CSX Corp.*, 922 F. Supp. 2d 514, 518 (E.D. Pa. 2013).

Federal courts are split on whether "snap removal"—hasty removal by a non-forum defendant before the plaintiff has an opportunity to serve the forum defendant—is permissible under the removal statute, and the Tenth Circuit has not addressed the issue. Fortunately, a review of district court cases in the Tenth Circuit reveals that the common law process has sketched a sensible rule under which courts will apply the plain language of § 1441(b)(2) unless doing so would create an absurd result[3] on the facts presented. *See Howard v. Crossland Constr. Co., Inc.*, Case No. 17-CV-00480-TCK-FHM, 2018 WL 2463099, at *3 (N.D. Okla. June 1, 2018) (synthesizing cases to formulate the prevailing rule that "a non-forum defendant may

---

[3] "[W]here applying the plain language [of a statute] 'would produce an absurd and unjust result which Congress could not have intended,' we need not apply the language in such a fashion." *Sunshine Haven Nursing Operations, LLC v. Dep't of Health & Human Servs.*, 742 F.3d 1239, 1250 (10th Cir. 2014) (alterations in original) (quoting *Robbins v. Chronister*, 402 F.3d 1047, 1050 (10th Cir. 2005)).

remove a case despite the existence of an unserved forum defendant[] unless removal would cause an 'absurd and bizarre result" "such as removal before the plaintiff has served any defendant, or before the plaintiff has had a reasonable opportunity to serve the forum defendant").

For example, district courts in this circuit permit the removal of cases involving an unserved forum defendant when there is scant evidence that the plaintiff made any timely attempt to serve that defendant. *See Howard v. Crossland Constr. Co., Inc.*, Case No. 17-CV-00480-TCK-FHM, 2018 WL 2463099, at *3 (N.D. Okla. June 1, 2018) (application of plain language did not lead to absurd result when "almost nine months after th[e] case was removed, the Court still ha[d] no indication that Plaintiffs ha[d] successfully served [the forum defendant]"); *Magallan v. Zurich Am. Ins. Co.*, 228 F. Supp. 3d 1257, 1262 (N.D. Okla. 2017) (explaining that "[w]hile a strict reading of § 1441(b) may lead to absurd results in some cases," no absurd result obtained where plaintiff made no attempt to serve forum defendant for 52 days after filing suit).

This principle makes good sense as a corollary to the fraudulent joinder rule (under which courts disregard a diversity-destroying sham defendant for purposes of diversity jurisdiction). For all of the same reasons, a plaintiff should not be able prevent removal by naming a forum defendant without any genuine intention to proceed against that defendant. When a plaintiff has made no attempt, or a belated attempt to serve the forum defendant, courts rightly give effect to the purpose of "properly joined and served" to prevent a nominal forum defendant from preventing removal. District courts so holding have wisely relied on the failure to attempt timely service of process on the forum defendant as good evidence of a plaintiff's insincerity in naming that defendant.

But where the facts show that the forum defendant is not a sham party, and that the removing defendant is attempting snap removal before the plaintiff has a reasonable opportunity to serve the forum defendant, courts do not countenance the absurd results flowing therefrom. *See In re Jean B. McGill Revocable Living Tr.*, Case No. 16-CV-707-GKF-TLW, 2017 WL 75762, at *3 (N.D. Okla. Jan. 6, 2017) (strict application of "properly joined and served" would create absurd result when "there [was] no risk of fraudulent joinder [because forum] defendants concede[d] they [were] 'necessary parties' to th[e] action"); *Snyder v. Moore*, No. CIV-13-1282-L, 2014 WL 11032956, at *2 (W.D. Okla. Feb. 11, 2014) ("In this case, there is no question the forum defendants are properly joined and that plaintiff intended to serve them."); *Lone Mountain Ranch, LLC*, 988 F. Supp.2d 1267 (literal application of "properly joined and served" inappropriate when "Plaintiffs moved forward with serving the forum defendant shortly after th[e] matter was removed, and therefore there [was] no indication that Plaintiffs joined [forum defendant] for the sole purpose of defeating diversity jurisdiction").

With these principles in mind, it is clear that this case falls squarely in the "absurd result" line of cases. There is every indication that CPB is a bona fide defendant, and plaintiffs clearly attempted to effect service of process a mere five days after filing the complaint through means that are permissible—indeed are encouraged—under Utah law.

Under rule 4(d)(3)(A) of the Utah Rules of Civil Procedure, "[a]ll parties have a duty to avoid unnecessary expenses of serving the summons and complaint." Plaintiffs' counsel, in essence, asked CPB's counsel to abide by this duty by accepting service of process on behalf of his client via email, an attempt to commence the same course of conduct these parties undertook less than a month prior. (ECF No. 39-2 at 5). CPB's counsel agreed to accept service of process but, unlike the prior exchange, did not execute the requisite form. (ECF No. 39-2 at 6). A mere

five days later, Chevron removed the action. Strict application of "properly joined and served" to these facts would lead to the absurd result of permitting the removal of a case in which plaintiffs expeditiously undertook all necessary action to effect service of process on the forum defendant under the relevant rules before Chevron removed the action eleven days after it was filed.[4] *See Snyder*, 2014 WL 11032956, at *2 (finding absurd result where forum defendant's counsel purported to be seeking permission from his client to waive formal service of process, but before obtaining permission, the non-forum defendant removed).

The court will not mechanically apply the plain language to countenance an outcome that is directly at odds with the purpose of § 1441(b)(2).

### III.     ORDER

For the reasons articulated, plaintiffs' Motion to Remand (ECF No. 16) is **GRANTED.** It is further ordered that:

1. This action be immediately **REMANDED** to the Third Judicial District Court of Utah, Salt Lake County.

Signed April 11, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[4] More broadly, a strict application of "properly joined and served" creates opportunities for unseemly gamesmanship where a state's service of process rules encourage or oblige represented defendants to waive formal service of process but do not regard service as having been effected until the waiving defendant takes some action. The facts here are insufficient to determine whether such gamesmanship occurred. Regardless, short of undertaking the unnecessary expense of effecting personal service on CPB, plaintiffs had taken all steps necessary to serve CPB five days before Chevron removed the action.